**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Parisi v. Dayton Bar Assn. Certified Grievance Commt.,* Slip Opinion No. 2019-Ohio-5157.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-5157

THE STATE EX REL. PARISI, APPELLANT, *v*. DAYTON BAR ASSOCIATION CERTIFIED GRIEVANCE COMMITTEE ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Parisi v. Dayton Bar Assn. Certified Grievance Commt.,* Slip Opinion No. 2019-Ohio-5157.]**

*Mandamus—Public-records requests—Documents prepared in attorney-discipline cases may be sought only through a request made under Sup.R. 44 through 47—Court of appeals' judgment denying writ sought under Public Records Act affirmed.*

(No. 2018-0140—Submitted January 29, 2019—Decided December 17, 2019.)

APPEAL from the Court of Appeals for Montgomery County, No. 27123, 2017-Ohio-9394.

_____

**FISCHER, J.**

{¶ 1} Appellant, Georgianna Parisi, appeals the judgment of the Second District Court of Appeals denying her petition for a writ of mandamus against

appellees, the Dayton Bar Association and the Dayton Bar Association Certified Grievance Committee. Because Parisi did not utilize the correct vehicle, Sup.R. 44 through 47, to seek to obtain the requested records, we affirm the judgment of the court of appeals.

## I. BACKGROUND

{¶ 2} In 2016, Parisi sent a letter to the executive director of the Dayton Bar Association requesting "any and all records" concerning her in the bar association's possession, pursuant to R.C. 149.43, Ohio's Public Records Act. She specifically requested:

> 1. [a]ny and all communications related to and/or concerning me, including communications by letter, phone, email, text, voice mail, and the like; and
>
> 2. [a]ny and all documents related to and/or concerning me.

The records sought related to her two attorney-discipline cases, *Dayton Bar Assn. v. Parisi*, case No. 2009-0064 ("*Parisi I*"), and *Dayton Bar Assn. v. Parisi*, case No. 2012-0060 ("*Parisi II*"), both of which had long been resolved. *See Dayton Bar Assn. v. Parisi*, 131 Ohio St.3d 345, 2012-Ohio-879, 965 N.E.2d 268, ¶ 2; *Parisi v. Heck*, S.D.Ohio No. 3:14-cv-346, 2015 WL 3999300, *4 (July 1, 2015).

{¶ 3} In a letter dated April 8, 2016, the grievance committee provided an initial response to Parisi's request. The grievance committee's letter expressed that it did not believe that the documents Parisi sought were subject to disclosure.

{¶ 4} Parisi then amended her request to include

> any and all emails, text messages, and any and all electronic messages, whether made on [the bar association's] or an individual's electronic equipment. I am requesting all records concerning me,

and have expanded it to all records which the [bar association] has concerning me, including records associated with *Parisi I* and *Parisi II*.

In a letter dated April 22, 2016, the grievance committee formally denied Parisi's request.

{¶ 5} Parisi filed a petition seeking a writ of mandamus against the bar association and the grievance committee in the Second District Court of Appeals. The bar association and the grievance committee filed a motion to dismiss for failure to state a claim, which the court of appeals converted into a motion for summary judgment. Parisi then filed a cross-motion for summary judgment.

{¶ 6} The court of appeals recognized that, as an initial matter, it was required to determine whether Parisi had utilized the correct vehicle to seek to obtain the requested attorney-discipline records. However, because the parties had not briefed that issue, the court proceeded to decide the merits of Parisi's petition under R.C. 149.43. The court of appeals granted summary judgment in favor of the bar association and the grievance committee, denied Parisi's cross-motion, and denied the writ of mandamus.

## II. ANALYSIS

{¶ 7} Parisi appealed to this court. She also filed a "motion to elect representation." We find her motion to be without merit. Furthermore, we conclude that because Parisi failed to seek to obtain the attorney-discipline records pursuant to Sup.R. 44 through 47, the court of appeals correctly granted summary judgment in favor of the bar association and the grievance committee and correctly denied the requested writ of mandamus.

### A. *Motion to elect representation*

{¶ 8} Parisi has filed a motion captioned "Motion to Elect Representation" requesting that this court order opposing counsel, Lisa Ann Hesse, Stephen Freeze,

and the law firm of Freund, Freeze & Arnold (collectively, "Freund Freeze"), "to make a determination as to whether they will represent" the bar association and the grievance committee *or* the bar association's counsel John Ruffolo, former president Brian Wildermuth, and former Board of Trustees member Jonathon Beck, individuals who are not and have never been parties to this action.

{¶ 9} Parisi is essentially seeking to disqualify opposing counsel. She alleges that Freund Freeze's representation of the bar association and the grievance committee is directly adverse to its prior clients, Ruffalo, Wildermuth, and Beck. Parisi posits the existence of an unwaivable conflict, in violation of Prof.Cond.R. 1.7 (prohibiting a lawyer from accepting or continuing a client's representation if that representation will be directly adverse to another client), because those individuals "may oppose [Parisi's] public records request, not on legal grounds, but because they personally wish to shield themselves from additional unethical behavior being revealed." We find Parisi's motion to be without merit.

{¶ 10} Freund Freeze represents only the bar association and the grievance committee, the only other parties to this action besides Parisi. Because the other individuals that Parisi mentions are not parties to this action, there is no basis for Freund Freeze to "elect representation" in this case.

{¶ 11} Further, Parisi is not a client of Freund Freeze, and she has not identified any obligations or responsibilities that could serve as a basis for opposing counsel's disqualification. Therefore, Parisi lacks standing to assert that Freund Freeze has a conflict of interest. *See Morgan v. N. Coast Cable Co.*, 63 Ohio St.3d 156, 586 N.E.2d 88 (1992), syllabus ("a stranger to an attorney-client relationship lacks standing to complain of a conflict of interest in that relationship").

{¶ 12} Therefore, we deny Parisi's "motion to elect representation."

**B. *Writ of mandamus to obtain records relating to attorney-discipline cases***

{¶ 13} Parisi petitioned for a writ of mandamus to compel the bar association and the grievance committee to provide her with documents relating to

her two attorney-discipline cases under *only* the Public Records Act, R.C. 149.43. The court of appeals addressed the merits of Parisi's petition under R.C. 149.43.

{¶ 14} However, as this court has stated in numerous cases since the promulgation of Sup.R. 44 through 47, a court must first address the threshold issue whether the petitioner has sought the requested documents through the correct vehicle, either R.C. 149.43 *or* Sup.R. 44 through 47. The vehicle used dictates not only the documents that are available to the relator and the manner in which they are available but also the remedies available to the relator should the relator be successful.

{¶ 15} Thus, before we may address the merits of the appeal, we must answer this threshold question of which is the proper vehicle to use in seeking to obtain documents related to attorney-discipline cases.

## 1. Threshold issue

### *a. Promulgation of Sup.R. 44 through 47*

{¶ 16} Prior to the promulgation of Sup.R. 44 through 47 in 2009, this court followed the Public Records Act in resolving public-records requests for court records. *See, e.g.*, *State ex rel. Cincinnati Enquirer v. Winkler*, 101 Ohio St.3d 382, 2004-Ohio-1581, 805 N.E.2d 1094. This court, however, recognized the need to promulgate its own rules to govern the release of public records held by the judiciary. Former Chief Justice Moyer acknowledged in a letter to Ohio attorneys that "[w]hile the courts in Ohio [had] always acted in accordance with the Public Records Act, the act does not govern the courts." Moyer, *A message from the Chief Justice: Openness is foundation of Ohio Government*, 81 Ohio State Bar Assn. Report 170, 171 (2008). Chief Justice Moyer believed—and rightfully so—that the "important constitutional principle of separation of powers" required this court to regulate judicial records through its Rules of Superintendence. *Id.*; *see State v. Steffen*, 70 Ohio St.3d 399, 409, 639 N.E.2d 67 (1994), quoting *In re Furnishings for Courtroom Two*, 66 Ohio St.2d 427, 430, 423 N.E.2d 86 (1981) (" 'courts

possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions' ").

{¶ 17} So, in 2009, after the proposed rules had been published for over two years, with more than 70 individuals and organizations participating in the extensive public-comment periods, this court adopted Sup.R. 44 through 47 through our constitutional superintendence authority under Article IV, Section 5(A)(1) of the Ohio Constitution. *See Public access rules in effect: Court offers training, Web page for local authorities*, 82 Ohio State Bar Assn. Report 636, 638 (2009). Those rules set forth the process that the public must utilize to seek to obtain records held by the judicial branch. *See* O'Connor, *The Ohio Modern Courts Amendment: 45 Years of Progress*, 76 Alb.L.Rev. 1963, 1971 (2013).

*b. The effect of Sup.R. 44 through 47*

{¶ 18} In promulgating Sup.R. 44 through 47, we announced to the other branches of government that this court would determine how records held by the judicial branch would be made accessible to the public. *Id.*; *see* Article IV, Section 5(A)(1), Ohio Constitution. Indeed, this court emphasized that point in *State ex rel. Vindicator Printing Co. v. Wolff*, 132 Ohio St.3d 481, 2012-Ohio-3328, 974 N.E.2d 89, ¶ 23, in which we determined that the relators were entitled to relief under the Rules of Superintendence, not the Public Records Act.

{¶ 19} This court has adhered to that view and has consistently held that the threshold issue in public-records cases is whether R.C. 149.43 *or* Sup.R. 44 through 47 governs the request. *See State ex rel. Richfield v. Laria*, 138 Ohio St.3d 168, 2014-Ohio-243, 4 N.E.3d 1040, ¶ 8; *State ex rel. Harris v. Pureval*, 155 Ohio St.3d 343, 2018-Ohio-4718, 121 N.E.3d 337, ¶ 10; *State ex rel. Husband v. Shanahan*, 157 Ohio St.3d 148, 2019-Ohio-1853, 133 N.E.3d 467, ¶ 5.

{¶ 20} This is so even if the issue of the appropriate vehicle is not raised by the parties or by the lower courts. *See Shanahan* at ¶ 5. Determining whether the Public Records Act or the Rules of Superintendence govern a relator's request does

not constitute a lack of judicial restraint, as suggested by the concurring opinion; instead, the determination is made based on our constitutional superintendence authority and is necessitated by the principle of separation of powers. If a party seeks to obtain judicial records through means other than Sup.R. 44 through 47, the party is not entitled to a writ of mandamus, as the Rules of Superintendence are the sole vehicle by which a party may seek to obtain such records. *See Laria* at ¶ 8; *Husband* at ¶ 6.

### c. Determining the appropriate vehicle

{¶ 21} To determine the appropriate vehicle, we consider the nature of the records requested. Generally, if the records requested are held by or were created for the judicial branch, then the party seeking to obtain the records must submit a request pursuant to Sup.R. 44 through 47. *See* Sup.R. 44(B) (defining "court record" as including case documents and administrative documents); Sup.R. 44(C)(1) (defining "case document" generally as a document "submitted to a court or filed with a clerk of court in a judicial action or proceeding"); Sup.R. 44(G)(1) (defining "administrative document" generally as a document "created, received, or maintained by the court to record the administrative, fiscal, personnel, or management functions, polices, decisions, procedures, operations, organization, or other activities of the court"); *Husband* at ¶ 6. If the party is not seeking to obtain the records through the correct vehicle, the party is not entitled to the requested records in that action. *See Laria* at ¶ 8; *Husband* at ¶ 6.

{¶ 22} Our recent decision in *Husband* best illustrates this process. Husband had requested public records relating to his criminal convictions. The records were held by the court and were accessible through the clerk of courts. The trial court had denied his request. Husband petitioned the First District Court of Appeals to issue a writ of mandamus to order the production of the requested documents pursuant to R.C. 149.43. The appellate court dismissed Husband's petition under R.C. 149.43 because "an incarcerated person is not entitled to records

relating to a criminal investigation or prosecution unless the sentencing court has found that the material is necessary to support a justiciable claim of the inmate" and the sentencing court had denied Husband's motion for release of the records.

{¶ 23} This court determined that the parties and the court of appeals had "erroneously applied the Ohio Public Records Act, R.C. 149.43, to Husband's records request." *Husband*, 157 Ohio St.3d 148, 2019-Ohio-1853, 133 N.E.3d 467, at ¶ 5. We affirmed the First District's dismissal of the petition but on the grounds that Husband was not seeking to obtain the documents pursuant to the Rules of Superintendence. *Id.* at ¶ 6. We made no judgment as to whether the requested records would have been subject to disclosure under Sup.R. 44 through 47. We simply recognized that when a requester seeks public records from a court, the Rules of Superintendence apply. *Id.* at ¶ 5.

## 2. Records in attorney-discipline cases

{¶ 24} Parisi seeks to obtain records relating to her attorney-discipline cases. Thus, we must determine whether such a records request is subject to Sup.R. 44 through 47.

{¶ 25} Attorney-discipline matters are decided exclusively by this court, as we have original jurisdiction over the discipline of persons admitted to the bar and all other matters relating to the practice of law. *See* Article IV, Section 2(B)(1)(g), Ohio Constitution. And through the Supreme Court Rules for the Government of the Bar of Ohio, this court created the Office of Disciplinary Counsel and the Board of Professional Conduct and authorized the board to certify grievance committees to aid us in managing attorney discipline throughout the state. *See* Gov.Bar R. V(1)(A) and (D) ("[t]here shall be a Board of Professional Conduct of the Supreme Court" consisting of 28 commissioners appointed by this court); Gov.Bar R. V(4)(A) (the board, with the approval of the Supreme Court, shall appoint disciplinary counsel); Gov.Bar R. V(5)(B) (the board may certify a grievance committee to investigate allegations of attorney misconduct).

{¶ 26} While these entities, especially the certified grievance committees, function somewhat independently from this court, the documents prepared and created in attorney-discipline cases by or for these entities must be considered records of this court for purposes of disclosure. That is because this court is the ultimate arbiter of attorney discipline, *Cincinnati Bar Assn. v. Powers*, 119 Ohio St.3d 473, 2008-Ohio-4785, 895 N.E.2d 172, ¶ 21, and we have the unique and complete responsibility, as designated by Article IV, Sections 2(B)(1)(g) and 5(B) of the Ohio Constitution, to regulate all matters related to the practice of law. Therefore, any documents prepared in attorney-discipline cases, like those requested by Parisi, may be sought only through a request made pursuant to Sup.R. 44 through 47. *See Husband*, 157 Ohio St.3d 148, 2019-Ohio-1853, 133 N.E.3d 467, at ¶ 5; *Harris*, 155 Ohio St.3d 343, 2018-Ohio-4718, 121 N.E.3d 337, at ¶ 10; *Laria*, 138 Ohio St.3d 168, 2014-Ohio-243, 4 N.E.3d 1040, at ¶ 8; *see also Cleveland Metro. Bar Assn. Certified Grievance Commt. v. Sliwinski*, 142 Ohio St.3d 1224, 2015-Ohio-1276, 29 N.E.3d 987, ¶ 19; *Disciplinary Counsel v. Williams*, 147 Ohio St.3d 1242, 2016-Ohio-5717, 65 N.E.3d 761, ¶ 20; Gov.Bar R. V(8)(F).

{¶ 27} The concurring opinion expresses concern that this holding will "create confusion" as to whether there is a judicial remedy to compel access to such records. Opinion concurring in part and concurring in judgment only in part at ¶ 64. This concern is misplaced. The process to obtain these records remains unchanged—we are merely clarifying that such records may be sought only through Sup.R. 44 through 47, not also through R.C. 149.43. Because Parisi seeks to use the procedures set forth in R.C. 149.43 to obtain records related to her attorney-discipline cases and has disclaimed any entitlement to relief under the Rules of Superintendence, this court need not reach the issue whether the requested documents are subject to disclosure. Parisi failed to request the documents pursuant

to Sup.R. 44 through 47; therefore, she is not entitled to a writ of mandamus. *See Husband* at ¶ 6; *Laria* at ¶ 8.

### III. CONCLUSION

{¶ 28} We deny Parisi's "motion to elect representation." And because Parisi did not utilize the correct vehicle, Sup.R. 44 through 47, to seek to obtain the requested records, we affirm the judgment of the Second District Court of Appeals granting summary judgment to appellees and denying the requested writ of mandamus.

Judgment affirmed.

O'CONNOR, C.J., and FRENCH and DONNELLY, JJ., concur.

KENNEDY, J., concurs in part and concurs in judgment only in part, with an opinion joined by DEWINE and STEWART, JJ.

_____

**KENNEDY, J., concurring in part and concurring in judgment only in part.**

{¶ 29} I agree that appellant Georgianna Parisi's motion seeking to disqualify counsel for appellees, the Dayton Bar Association Certified Grievance Committee and the Dayton Bar Association, should be denied. I therefore join Part II, Section A of the majority opinion.

{¶ 30} However, I write separately because I would not consider whether— and cannot subscribe to the majority's view that—the public-access provisions of the Rules of Superintendence for the Courts of Ohio, Sup.R. 44 through 47, apply to the investigatory materials of a bar association's certified grievance committee. The court of appeals did not consider this issue in the first instance, Parisi expressly disclaimed reliance on the Superintendence Rules as supporting her claim, and the majority gives no persuasive explanation of how a certified grievance committee of a private, voluntary bar association is "the Supreme Court" within the meaning of Sup.R. 44 through 47. *See* Sup.R. 44 ("Sup.R. 44 through 47 apply to the

Supreme Court"). And contrary to the majority's assumption that the Superintendence Rules preempt the Public Records Act, R.C. 149.43, the constitutional grant of authority to this court to adopt rules of superintendence for the courts of Ohio does not provide that those rules supersede the enactments of the General Assembly; therefore, Parisi's failure to assert a right to court records under the Superintendence Rules in addition to the Public Records Act does not foreclose relief. Lastly, by treating the Dayton Bar Association's certified grievance committee as an arm of this court, the majority sows confusion regarding whether there is any judicial means to compel a certified grievance committee to release public records—a court of appeals lacks authority to issue a writ of mandamus against this court or its adjuncts, and this court may not direct a writ against itself.

{¶ 31} Nonetheless, I concur in the court's judgment affirming the judgment of the court of appeals, because the records that Parisi seeks do not fit within the meaning of "public record" as defined by R.C. 149.43(A)(1)(v).

**Judicial Restraint**

{¶ 32} Parisi's petition sought records only under the Public Records Act, and as the majority acknowledges, the court of appeals did not consider whether R.C. 149.43 or the public-access provisions of the Rules of Superintendence are the appropriate vehicle for obtaining records from a bar association's certified grievance committee. In her brief to this court, Parisi disclaims entitlement to relief pursuant to the Superintendence Rules. But although the bar association and its grievance committee make the conclusory assertion that the statute is not the proper mechanism to seek to obtain the records of a certified grievance committee, they fail to explain how such records are "court records" for purposes of the statute.

{¶ 33} Whether the public-access provisions of the Superintendence Rules apply to a certified grievance committee's investigatory materials is a question of first impression, and this court lacks the benefit of lower-court consideration and full briefing and argument on it. The answer to that question is not an obvious one,

and we would benefit from the consideration of arguments tested in the crucible of the adversarial process by parties with a direct interest in the outcome.

{¶ 34} Our longstanding policy is not to address an unbriefed issue. *E.g.*, *Willoughby Hills Dev. & Distrib., Inc. v. Testa*, 155 Ohio St.3d 276, 2018-Ohio-4488, 120 N.E.3d 836, ¶ 14, fn. 1; *State v. Roberts*, 150 Ohio St.3d 47, 2017-Ohio-2998, 78 N.E.3d 851, ¶ 85; *Risner v. Ohio Dept. of Natural Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 28, citing *Sizemore v. Smith*, 6 Ohio St.3d 330, 332, 453 N.E.2d 632 (1983), fn. 2. The rationale for this policy, as well as the premise of the adversarial process itself, is that " ' "appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them." ' " (Brackets sic.) *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19, quoting *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part), quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983).

{¶ 35} The process of judicial review depends on the parties to identify, preserve, and present issues for appeal. Courts " 'do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties.' " *Greenlaw v. United States*, 554 U.S. 237, 244, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008), quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir.1987) (Arnold, J., concurring in the denial of rehearing en banc). As former Justice Cook once wrote, "even the most measured sense of judicial restraint confines this court to passing upon only those issues developed below." *Fulmer v. Insura Prop. & Cas. Co.*, 94 Ohio St.3d 85, 100, 760 N.E.2d 392 (2002) (Cook, J., dissenting).

{¶ 36} Our review should therefore be confined to the issue actually litigated by the parties and decided by the court of appeals in the first instance—

i.e., whether the Public Records Act requires a bar association's certified grievance committee to produce its investigatory materials as public records.

**The Public Records Act**

{¶ 37} The Public Records Act reflects the state's policy that "open government serves the public interest and our democratic system," *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20, and "reinforce[s] the understanding that open access to government papers is an integral entitlement of the people, to be preserved with vigilance and vigor," *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 17.

{¶ 38} R.C. 149.43(B)(1) requires a public office to make copies of public records available to any person upon request, within a reasonable period of time. However, "[r]ecords the release of which is prohibited by state or federal law" are not public records subject to release. R.C. 149.43(A)(1)(v). Gov.Bar R. V(5)(H) states that "[n]o employee, appointee, or member of a certified grievance committee shall disclose to any person any proceedings, documents, or deliberations of the committee." Further, Gov.Bar R. V(8) establishes when documents relating to the investigation of grievances are confidential and when they are discoverable.

{¶ 39} This leads to two questions: Are Gov.Bar R. V(5) and (8) state law for purposes of R.C. 149.43(A)(1)(v)? And if so, may a bar association's certified grievance committee withhold documents sought in a public-records request that would be discoverable by litigants in a disciplinary proceeding?

{¶ 40} We addressed a variant of the first question in *State ex rel. Beacon Journal Publishing Co. v. Waters*, 67 Ohio St.3d 321, 617 N.E.2d 1110 (1993). At issue in that case was whether Crim.R. 6(E), which provides for grand-jury secrecy, is a state law prohibiting the release of records. The plurality opinion explained that procedural rules "adopted pursuant to constitutional authority" are state law for purposes of the Public Records Act. *Id.* at 323-324. The plurality opinion therefore determined that Crim.R. 6(E) is state law because it had been adopted pursuant to

the constitutional authority to promulgate rules of practice and procedure granted to this court by Article IV, Section 5(B) of the Ohio Constitution. *Id.* at 324. A majority of the court subsequently adopted the plurality opinion's determination in *State ex rel. Gannett Satellite Information Network, Inc. v. Petro*, 80 Ohio St.3d 261, 266, 685 N.E.2d 1223 (1997), and *State ex rel. WLWT-TV5 v. Leis*, 77 Ohio St.3d 357, 361, 673 N.E.2d 1365 (1997), *overruled on other grounds*, *State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 2016-Ohio-8394, 89 N.E.3d 598.

{¶ 41} Similarly, Gov.Bar R. V(5)(H) and (8) were adopted according to our constitutional duty to "make rules governing the admission to the practice of law and discipline of persons so admitted," Ohio Constitution, Article IV, Section 5(B). In accordance with *Beacon Journal Publishing*, these rules have the force of law in this state, and if they preclude the release of a document, then the document is not a public record that must be released pursuant to the Public Records Act, R.C. 149.43(A)(1)(v).

{¶ 42} That leaves the second question—whether a record that may be discoverable during litigation is subject to release as a public record.

{¶ 43} Gov.Bar R. V(8)(A)(1) provides that subject to certain enumerated exceptions, "[p]rior to a determination of probable cause by the Board [of Professional Conduct], all proceedings, documents, and deliberations relating to review, investigation, and consideration of grievances shall be confidential." Gov.Bar R. V(8)(A)(3) specifies that subject to exceptions not relevant here, "all investigatory materials prepared in connection with an investigation conducted pursuant to Section 9 of this rule or submitted with a complaint filed pursuant to Section 10 of this rule shall be confidential prior to certification of a formal complaint pursuant to Section 11 of this rule."

{¶ 44} Gov.Bar R. V(8)(B), however, provides that after the finding of probable cause,

the complaint and all subsequent proceedings conducted and documents filed in connection with the complaint *shall be public except as follows*:

\* \* \*

(3) The summary of investigation prepared by the relator shall be confidential as work-product of the relator. All other investigatory materials and any attachments prepared in connection with an investigation conducted pursuant to Section 9 of this rule or submitted with a complaint filed pursuant to Section 10 of this rule *shall be discoverable* as provided in the Ohio Rules of Civil Procedure.

(Emphasis added.)

**{¶ 45}** Gov.Bar R. V(8)(B)(3) therefore provides an exception to the general rule that after a probable-cause finding, documents filed in a disciplinary proceeding are subject to release to the public. Investigatory materials and any attachments prepared in connection with an investigation are not public, but they are discoverable.

**{¶ 46}** That information is discoverable does not make it publicly available. "The rules governing discovery do not envision a third party's access to the information exchanged"; rather, discovery " 'is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation.' " *State ex rel. WHIO-TV-7 v. Lowe*, 77 Ohio St.3d 350, 354, 673 N.E.2d 1360 (1997), quoting *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir.1986). We have therefore recognized that when a government office provides documents in discovery to opposing parties in litigation, it does not make those documents public records. *See id*. at 355.

{¶ 47} Although investigatory records may be discoverable during a disciplinary proceeding, in this case, Parisi sought these types of records through a public-records request, so she stands on the same footing as any other member of the public who is a stranger to the litigation. Gov.Bar R. V(5)(H) bars the release of these documents, and nothing in Gov.Bar R. V(8)(B) makes them public records. Therefore, pursuant to R.C. 149.43(A)(1)(v), the documents that Parisi requested are not public records.

{¶ 48} That conclusion should end the analysis. Reaching beyond the narrow questions presented in this case even though it is unnecessary to do so would contravene " 'the cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more,' " *State ex rel. LetOhioVote.org v. Brunner*, 123 Ohio St.3d 322, 2009-Ohio-4900, 916 N.E.2d 462, ¶ 51, quoting *PDK Laboratories, Inc. v. United States Drug Enforcement Administration*, 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring in part and concurring in judgment).

### The Rules of Superintendence

{¶ 49} The majority today proceeds to answer an unasked question of first impression, and that answer places the public-access provisions of the Superintendence Rules in direct conflict with the Public Records Act.

{¶ 50} This court had long held that Ohio's Public Records Act, R.C. 149.43, applies to court records. *State ex rel. Cincinnati Enquirer v. Winkler*, 101 Ohio St.3d 382, 2004-Ohio-1581, 805 N.E.2d 1094, ¶ 5; *State ex rel. Beacon Journal Publishing Co. v. Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 9-13; *State ex rel. Mothers Against Drunk Drivers v. Gosser*, 20 Ohio St.3d 30, 33, 485 N.E.2d 706 (1985). After all, the Public Records Act provides that "public records" are records kept by a "public office," R.C. 149.43(A)(1), and a court or judicial agency is a public office, R.C. 149.011(A) and (B). No one in this case questions the General Assembly's authority to make the public-records law

16

applicable to the judiciary. Yet the majority nonetheless implicitly overturns decades of caselaw holding that the Public Records Act applies to the courts based on the sudden epiphany—unmoored from legal authority or analysis—that R.C. 149.43 violates the separation-of-powers doctrine.

{¶ 51} We have previously stated in per curiam opinions that Sup.R. 44 through 47 are the "sole vehicle" for obtaining court records in actions commenced after July 1, 2009. (Emphasis omitted.) *State ex rel. Husband v. Shanahan*, 157 Ohio St.3d 148, 2019-Ohio-1853, 121 N.E.3d 337, ¶ 5; *State ex rel. Harris v. Pureval*, 155 Ohio St.3d 343, 2018-Ohio-4718, 121 N.E.3d 337, ¶ 10; *State ex rel. Richfield v. Laria*, 138 Ohio St.3d 168, 2014-Ohio-243, 4 N.E.3d 1040, ¶ 8. *But see State ex rel. Vindicator Printing Co. v. Wolff*, 132 Ohio St.3d 481, 2012-Ohio-3328, 974 N.E.2d 89, ¶ 1 (explaining that relief rendered pursuant to the Superintendence Rules made any claim under the Public Records Act moot). None of these cases suggested that the Public Records Act is unconstitutional as applied to the courts. And none of these decisions considered the question whether the Ohio Constitution empowers this court to adopt rules of superintendence for Ohio courts that preempt the lawful enactments of the legislative branch.

{¶ 52} Article IV, Section 5 of the Ohio Constitution vests this court with authority to promulgate court rules. Section 5(A)(1) states: "In addition to all other powers vested by this article in the supreme court, the supreme court shall have general superintendence over all courts in the state. Such general superintending power shall be exercised by the chief justice in accordance with rules promulgated by the supreme court." Pursuant to this authority, this court adopted the Rules of Superintendence, which "are designed '(1) to expedite the disposition of both criminal and civil cases in the trial courts of this state, while at the same time safeguarding the inalienable rights of litigants to the just processing of their causes; and (2) to serve that public interest which mandates the prompt disposition of all cases before the courts.' " *State v. Steffen*, 70 Ohio St.3d 399, 409, 639 N.E.2d 67

(1994), quoting *State v. Singer*, 50 Ohio St.2d 103, 109-110, 362 N.E.2d 1216 (1977).

{¶ 53} Another type of court rules is authorized by Section 5(B), which provides: "The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. * * * All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." Article IV, Section 5(B), Ohio Constitution. Section 5(B) thus expressly empowers this court to adopt procedural rules that supersede the enactments of the General Assembly. *Morris v. Morris*, 148 Ohio St.3d 138, 2016-Ohio-5002, 69 N.E.3d 664, ¶ 30. But the framers of the Modern Courts Amendment of 1968, which added Section 5(B) to Article IV, placed two important limitations on our authority to supplant the enactments of the General Assembly: first, our procedural rules may not abridge, enlarge, or modify any substantive right; and second, the General Assembly by joint resolution may disapprove any proposed procedural rule prior to its taking effect. Article IV, Section 5(B), Ohio Constitution.

{¶ 54} In contrast, nothing in Article IV, Section 5(A)(1) grants this court power to preempt the lawful enactments of the legislative branch of government by adopting a rule under our authority to supervise lower courts. Unlike Section 5(B), Section 5(A)(1) does not provide that the Superintendence Rules supersede all laws that are in conflict with them nor does it contain any requirement to submit proposed superintendence rules to the General Assembly for review. In fact, we have described our superintendence authority as "ensur[ing] that state courts act in compliance and consistency with the will of the General Assembly." *State v. Smith*, 136 Ohio St.3d 1, 2013-Ohio-1698, 989 N.E.2d 972, ¶ 4, fn. 2.

{¶ 55} Ohio courts—including every appellate district—have consistently recognized that the rules adopted pursuant to our supervisory power over lower courts do not supersede statutes with which they are in conflict and do not create

either substantive rights or procedural law. *State v. Ventura*, 2016-Ohio-5151, 69 N.E.3d 189, ¶ 24 (1st Dist.); *State v. Keeble*, 2d Dist. Greene No. 03CA84, 2004-Ohio-3785, ¶ 17; *Larson v. Larson*, 3d Dist. Seneca No. 13-11-25, 2011-Ohio-6013, ¶ 13; *In re K.W.*, 2018-Ohio-1933, 111 N.E.3d 368, ¶ 99 (4th Dist.); *Sepich v. Bell*, 5th Dist. Stark No. CA-7350, 1988 WL 17155, *3 (Feb. 8, 1988); *In re T.C.*, 6th Dist. Lucas No. L-15-1106, 2015-Ohio-3665, ¶ 21; *In re Guardianship of Myers*, 7th Dist. Mahoning Nos. 02-CA-6 and 02-CA-42, 2003-Ohio-5308, ¶ 21; *In re A.P.D.*, 8th Dist. Cuyahoga No. 100504, 2014-Ohio-1632, ¶ 13; *In re Z.H.*, 2013-Ohio-3904, 995 N.E.2d 295, ¶ 16 (9th Dist.); *Myers v. Wade*, 10th Dist. Franklin No. 16AP-667, 2017-Ohio-8833, ¶ 22; *In re A.R.*, 11th Dist. Ashtabula No. 2018-A-0078, 2019-Ohio-2166, ¶ 29; *In re Guardianship of Bernie*, 12th Dist. Butler No. CA2018-01-005, 2019-Ohio-334, ¶ 27-28, *appeal not accepted*, 155 Ohio St.3d 1469, 2019-Ohio-2100, 122 N.E.3d 1294; *see also State v. Singer*, 50 Ohio St.2d 103, 110, 362 N.E.2d 1216 (1977) ("The Rules of Superintendence are not designed to alter basic substantive rights of criminal defendants").

{¶ 56} As the Third District Court of Appeals has explained,

> "whereas rules of procedure adopted by the Supreme Court require submission to the legislature, rules of superintendence are not so submitted and, hence, are of a different category. They are not the equivalent of rules of procedure and have no force equivalent to a statute. They are purely internal housekeeping rules which are of concern to the judges of the several courts but create no rights in individual defendants."

(Emphasis omitted.) *Larson* at ¶ 13, quoting *State v. Gettys*, 49 Ohio App.2d 241, 243, 360 N.E.2d 735 (3d Dist.1976).

**{¶ 57}** Article IV, Section 5(A)(1) of the Ohio Constitution does not provide for the public-access provisions of the Superintendence Rules to preempt the Public Records Act, and when there is a conflict between them, the statute prevails. For this reason, Parisi's failure to assert a right to access court records under Sup.R. 44 through 47 cannot be fatal to her mandamus action.

### Certified Grievance Committees

**{¶ 58}** The majority reasons that because this court has the constitutional authority to discipline attorneys, the documents prepared and created in attorney-discipline cases by or for certified grievance committees "must be considered records of this court for purposes of disclosure" under Sup.R. 44 through 47. Majority opinion at ¶ 26.

**{¶ 59}** That conclusion is a non sequitur. The fact that we have constitutional authority to discipline attorneys says nothing about whether a certified grievance committee maintains court records, either on our behalf or on its own.

**{¶ 60}** The Rules for the Government of the Bar do not make a certified grievance committee an adjunct of this court. Instead, certified grievance committees are created by the Ohio State Bar Association or by local bar associations in Ohio, which may apply to the Board of Professional Conduct for certification, Gov.Bar R. V(5)(A) and (B). Certification may be obtained from the board and retained by a grievance committee by satisfying the standards set forth in Gov.Bar R. V(5)(D), which include requirements for membership and term limits, meetings and office staff, designating bar counsel and training volunteers, maintaining files and records, funding, establishing procedures for processing grievances, and reporting to the board. (None of the standards specifically address public records.) If a certified grievance committee fails to comply with its obligations under the rules, it may lose the privilege of certification. Gov.Bar R. V(5)(F). But neither the standards nor any other provision of the rule authorizes

this court to exercise the degree of authority and control over these private entities for them to be considered an arm of the court for purposes of the Superintendence Rules. We do not appoint the members of certified grievance committees, certify committees to conduct investigations, or control day-to-day committee operations, and we do not review committees' decisions or decertify committees for failing to satisfy the standards set forth in Gov.Bar R. V(5)(D)(1).

{¶ 61} In support of its conclusion that "any documents prepared in attorney-discipline cases, like those requested by Parisi, may be sought only through a request made pursuant to Sup.R. 44 through 47," majority opinion at ¶ 26, the majority provides a string citation, but none of the authorities cited supports that conclusion. Our decisions in *Husband*, 157 Ohio St.3d 343, 2019-Ohio-1853, 121 N.E.3d 337, *Harris*, 155 Ohio St.3d 343, 2018-Ohio-4718, 121 N.E.3d 337, and *Laria*, 138 Ohio St.3d 168, 2014-Ohio-243, 4 N.E.3d 1040, involved records sought from a common pleas court, a county clerk of courts, and a municipal court and its clerk, respectively.

{¶ 62} The majority's reliance on *Cleveland Metro. Bar Assn. Certified Grievance Commt. v. Sliwinski*, 142 Ohio St.3d 1224, 2015-Ohio-1276, 29 N.E.3d 987, ¶ 19, and *Disciplinary Counsel v. Williams*, 147 Ohio St.3d 1242, 2016-Ohio-5717, 65 N.E.3d 761, ¶ 20, is also misplaced, because those decisions are simply boilerplate entries imposing an interim remedial suspension and reciprocal discipline, respectively, and each states that each "case document" filed in the case—i.e., "a document and information in a document submitted to a court or filed with a clerk of court in a judicial action or proceeding," Sup.R. 44(C)(1)—is subject to Sup.R. 44 through 47. Neither entry holds or even suggests that a certified grievance committee maintains this court's records.

{¶ 63} And Gov.Bar R. V(8)(F), the last authority cited in the majority's string citation, does not support its conclusion either. That provision states that "[e]xcept as otherwise provided in this section or in rules adopted by the Supreme

Court, documents and records pertaining to the administration and finances of the Board and the Office of Disciplinary Counsel, including budgets, reports, and records of income and expenditures, shall be made available, upon request, as provided in Sup.R. 45." Although this rule makes some records of the board and disciplinary counsel subject to the public-access requirements of the Superintendence Rules, it does not allude to the records of a certified grievance committee or make them subject to Sup.R. 44 through 47—even though certified grievance committees are mentioned throughout Gov.Bar R. V(8). Rather than supporting the majority's position, the language in Gov.Bar R. V(8)(F) cuts against it.

{¶ 64} Gov.Bar R. V(5) invites the Ohio State Bar Association and local bar associations to participate in the investigation and prosecution of professional misconduct, but that participation does not turn a volunteer association of attorneys into "the Supreme Court" for purposes of the Public Records Act. The majority's contrary holding not only is unsupported by reason or authority but also will create confusion in Ohio public-records law regarding whether there is any judicial remedy to compel access to the public records of any entity affiliated with this court in some way.

{¶ 65} Sup.R. 47(B) provides that "[a] person aggrieved by the failure of a court or clerk of court to comply with the requirements of Sup.R. 44 through 47 may pursue an action in mandamus pursuant to Chapter 2731. of the Revised Code." R.C. 2731.01 provides that "[m]andamus is a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." As we explained in *State ex rel. Wanamaker v. Miller*, "[b]y its very definition, the writ of mandamus is a writ which shall be issued only to an *inferior* tribunal." (Emphasis added.) 164 Ohio St. 174, 175, 128 N.E.2d 108 (1955).

22

**{¶ 66}** *Wanamaker* involved two original actions filed in the court of appeals: a mandamus action seeking to compel the clerk of this court to file an affidavit of disqualification and a prohibition action seeking to prohibit this court's justices from hearing that affidavit of disqualification. *Id*. at 174. Although we recognized that the Clerk of the Supreme Court is a ministerial officer of this court who is obliged to follow our instructions, we held that "[i]t does not follow from that * * * that any court inferior to the Supreme Court has the authority to issue similar instructions to such clerk." *Id.* at 175. We also noted that a writ of prohibition is " 'an extraordinary judicial writ, issuing out of a court of superior jurisdiction and directed to an *inferior tribunal properly and technically denominated such*' " and that "[i]nasmuch as the Supreme Court is not a tribunal inferior to the Court of Appeals, it is axiomatic that there was no basis for the issuance of the writs by the Court of Appeals." (Emphasis sic.) *Id*. at 175-176, quoting *State ex rel. Nolan v. ClenDening*, 93 Ohio St. 264, 270, 112 N.E. 1029 (1915).

**{¶ 67}** Similarly, if a bar association's certified grievance committee is "the Supreme Court" for purposes of Sup.R. 44 through 47, then a court of appeals has no authority to issue a writ of mandamus compelling release of its records. Following the majority's analysis would mean that Parisi's complaint should be dismissed rather than denied on its merits.

**{¶ 68}** Further, a writ of mandamus may be issued only against an "inferior" tribunal. R.C. 2731.01. Therefore, this court may not issue a writ against itself to compel release of its own records. As the Supreme Court of Georgia has explained, "[n]othing in our Constitution suggests that this Court can mandamus itself or its Justices, nor does such an odd practice find support in our precedent or the history of the writ of mandamus." *Clark v. Hunstein*, 291 Ga. 646, 650, 733 S.E.2d 259 (2012); *see also People ex rel. Filkin v. Flessner*, 48 Ill.2d 54, 56, 268 N.E.2d 376 (1971) (a judge may not issue a writ of mandamus against another member of the

same court); *State ex rel. Williams v. Hennepin Cty.*, 252 Minn. 330, 331, 89 N.W.2d 907 (1958) ("A judge of the district court cannot order himself to do something by a writ of mandamus"); *Italian Homestead Assn. v. Lewis*, 174 La. 94, 96, 139 So. 769 (1932) (a judge may not issue a writ against himself or herself).

## Conclusion

{¶ 69} Parisi's petition sought records only under the Public Records Act, which does not require release of those records. Because Parisi is not entitled to relief based on the arguments she makes in this court, it is not necessary to go beyond those arguments to resolve this case. As the majority's decision today demonstrates, reaching to answer questions that have not been the subject of adversarial briefing and lower-court consideration risks an ill-informed decision that may have unintended consequences. And here, the majority assumes that our Superintendence Rules preempt the enactments of the legislative branch, and it relies on a leap of logic to conclude that a bar association's certified grievance committee is the custodian of this court's records. The result will be confusion over where a person is to turn to compel the production of public records held by an entity that is in some way affiliated, however tangentially, with this court.

{¶ 70} The preferable course would be to leave these issues for a day when parties preserve and present them for our review. Accordingly, although I would affirm the judgment of the court of appeals, I would do so for reasons different from those expressed in the majority opinion.

DEWINE and STEWART, JJ., concur in the foregoing opinion.

_____

Georgianna Parisi, pro se.

Freund, Freeze & Arnold, L.P.A., Stephen V. Freeze, and Lisa A. Hesse, for appellees.

_____