## S12O1700. CLARK v. HUNSTEIN.
(733 SE2d 259)

NAHMIAS, Justice.

On June 8, 2012, Robert L. Clark filed a petition in this Court against Chief Justice Carol W. Hunstein, seeking a writ of mandamus ordering Chief Justice Hunstein to rule on his application for a certificate of probable cause to appeal his habeas corpus case, which is pending in this Court in *Clark v. Roberts*, Case No. S11H0785.[1] The Attorney General, representing Chief Justice Hunstein, moved to dismiss the mandamus petition on the ground that it should have

---

[1] Chief Justice Hunstein has disqualified herself from participation in the consideration or decision of this case.

been filed in superior court, citing *Graham v. Cavender*, 252 Ga. 123 (311 SE2d 832) (1984), which followed our decision in *Brown v. Johnson*, 251 Ga. 436 (306 SE2d 655) (1983). As explained below, dismissal of Clark's petition with direction that it should be filed in the superior court is not the proper disposition. Instead, we conclude that, because the Supreme Court of Georgia is the highest court in this state, the writ of mandamus may not be issued against this Court or its Justices, and we dismiss Clark's original mandamus petition on that ground.

1. Historically, the writ of mandamus could issue only from a higher court to a lower court. See *Graham*, 252 Ga. at 124. As this Court explained in *Shreve v. Pendleton*, 129 Ga. 374 (58 SE 880) (1907), "The very etymology of the word 'mandamus,' — we command — implies superior power." Id. Accord Black's Law Dictionary (9th ed. 2009) (defining mandamus as a "writ issued by a court to compel performance of a particular act by a lower court"). See also 55 CJS Mandamus § 333 (2009) (noting that, historically, a writ of mandamus could issue only from a higher court to a lower court); 52 AmJur2d Mandamus §§ 301, 302 (2011) (same). Thus, before 1983, this Court repeatedly held that one superior court judge had no jurisdiction to mandamus another superior court judge. See, e.g., *Elliott v. Leathers*, 223 Ga. 497, 502 (156 SE2d 440) (1967); *Elliott v. Hipp*, 134 Ga. 844, 846 (68 SE 736) (1910).

This rule created a problem. Before 1983, this Court and the Court of Appeals had no *original* mandamus jurisdiction like that vested in the superior courts. See *Brown*, 251 Ga. at 436. The appellate courts had only *appellate* mandamus jurisdiction, which was extremely narrow. See, e.g., *Savannah, Fla. & W. Ry. Co. v. Postal Telegraph-Cable Co.*, 113 Ga. 916, 918 (39 SE 399) (1901) ("If there is any law authorizing this court to issue a mandamus except in the case where the judge refuses to sign a bill of exceptions, we are not aware of it."). Consequently, no court could compel a recalcitrant superior court judge to enter an order that the law required the judge to enter, "no matter how grave might be the error committed . . . or how irreparable the injury which might result therefrom." Id. at 917-918. The only remedy against the judge was impeachment and removal from office. See *Graham*, 252 Ga. at 123.

Apparently to address this situation, the 1983 Georgia Constitution gave this Court and the Court of Appeals original mandamus jurisdiction.

Each court may exercise such powers as necessary in aid of its jurisdiction or to protect or effectuate its judgments; but only the superior *and appellate* courts shall have the power

to issue process in the nature of *mandamus*, prohibition, specific performance, quo warranto, and injunction. . . .

Ga. Const. of 1983, Art. VI, Sec. I, Par. IV (emphasis added). We have construed this grant of authority as "merely enabling, not mandatory." *Graham*, 252 Ga. at 124. This Court has sought to "maintain its general status as an appellate court," id., recognizing, among other things, that unlike trial courts, this Court has no established mechanism for developing an evidentiary record.[2]

In *Brown*, we adopted the following procedure for petitions for mandamus against superior court judges:

> Such petition may be filed in the appropriate superior court. Being the respondent, the superior court judge will disqualify, another superior court judge will be appointed to hear and determine the matter, and the final decision may be appealed to the Supreme Court for review. Anything to the contrary in *Shreve v. Pendleton* will no longer be followed.

*Brown*, 251 Ga. at 437 (citation omitted). See also *Hamby v. Pope*, 229 Ga. 339, 340 (191 SE2d 53) (1972) (Gunter, J., concurring specially) (arguing that this procedure should be followed even before the 1983 Constitution). In *Graham*, we reiterated that this procedure must be followed before a petitioner seeks to invoke this Court's original mandamus jurisdiction. See 252 Ga. at 123-124.

2. The Attorney General asks us to dismiss Clark's petition because he failed to follow the procedure set forth in *Brown* for mandamus petitions against superior court judges. But Chief Justice Hunstein is not a superior court judge, and we have never held that the procedure adopted in *Brown* applies to an original petition for mandamus against this Court or its Justices. It is one thing to allow a superior court judge to mandamus a judge of *coordinate* jurisdiction, which may be followed by appellate review in this Court. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (5) ("Unless otherwise provided by law, the Supreme Court shall have appellate jurisdiction of . . . [a]ll cases involving extraordinary remedies."). But allowing a

---

[2] The United States Supreme Court has traditionally appointed special masters to hold evidentiary hearings in its original jurisdiction cases. See *United States v. Raddatz*, 447 U. S. 667, 683, n. 11 (100 SC 2406, 65 LE2d 424) (1980) ("In exercising our original jurisdiction under Art. III, we appoint special masters who may be either Art. III judges or members of the Bar . . . . The master is generally charged to 'take such evidence as may be . . . necessary,' and to 'find the facts specially and state separately his conclusions of law thereon.' . . . [T]he master's recommendations are advisory only . . . ." (citations omitted)).

lower court to mandamus a *higher* court would be a stark departure from legal tradition and could lead to mischief. Nothing in the 1983 Constitution, *Brown*, or *Graham* suggests such a radical change in mandamus authority.[3]

In a part of *Shreve* not addressed by *Brown*, the Supreme Court rejected as fanciful the idea that a superior court judge had the authority to mandamus this Court:

> This section of the [C]ode [the predecessor to today's general mandamus statute, OCGA § 9-6-20], at first blush, seems sufficiently broad to cover every case of official inaction; but comprehensive as it is, it can not extend to every case of failure to perform official duty. For instance, suppose the Supreme Court should arbitrarily refuse to decide a case within the time limited by the constitution, no one would contend that the judge of the trial court, whose decision is under review, could compel action, by issuing the writ of mandamus at the instance of either litigant.

*Shreve*, 129 Ga. at 374.

Although this passage was dicta, it expresses what appears to be a universally accepted principle, namely, that in hierarchical judicial systems, lower courts have no jurisdiction to issue orders to higher courts or to their members in their official capacities, whether by mandamus or otherwise. See, e.g., *Trackwell v. United States Govt.*, 472 F3d 1242, 1246 (10th Cir. 2007) ("For a district court to issue a writ against an equal or higher court would be remarkable."); *Tillman v. United States Supreme Court*, 979 F2d 248, 248 (D.C. Cir. 1992) ("[N]o other court may compel action of the Supreme Court . . . ."); *Panko v. Rodak*, 606 F2d 168, 171, n. 6 (7th Cir. 1979) ("[I]t seems axiomatic that a lower court may not order the judges or officers of a higher court to take an action."); *State ex rel. Wanamaker v. Miller*, 128 NE2d 108, 109 (Ohio 1955) (holding, where writs were sought "to

---

[3] In *Banks v. Benham*, 270 Ga. 91 (510 SE2d 290) (1998), the losing party in a condemnation appeal filed a petition for mandamus in the Fulton County Superior Court against this Court's Justices, seeking an order compelling the Justices to address constitutional issues that he felt the Court had neglected in deciding his appeal. See id. at 91. The trial court granted a motion to dismiss, and Banks appealed. See id. The entire Court then disqualified, and seven superior court judges were appointed to hear the appeal. See id. at 92. The fill-in Court affirmed the trial court's dismissal of the mandamus petition on the ground that judicial decisions are not subject to challenge by mandamus; the Court did not address the trial court's authority to mandamus a higher court, which, as we hold today, would have been an alternative ground for the same result (affirming dismissal of the petition). To the extent that *Banks* may be read to suggest that lower courts have the authority to mandamus higher courts or their members, it is disapproved.

prohibit the Chief Justice and judges of the [Ohio] Supreme Court from hearing and determining an affidavit of disqualification," that "[i]nasmuch as the Supreme Court is not a tribunal inferior to the Court of Appeals, it is axiomatic that there was no basis for the issuance of the writs by the Court of Appeals").[4] Accordingly, we hold that in Georgia, a lower court has no authority to mandamus a higher court or its judges. We therefore reject the Attorney General's argument that we should dismiss this case because Clark failed to follow the procedure adopted in *Brown* for mandamus petitions against superior court judges.

3. Instead, Clark's petition for mandamus against Chief Justice Hunstein must be dismissed for a different reason. The Georgia Constitution provides for a single Supreme Court, which conducts its affairs and decides its cases *as a Court*, not as individual Justices (even if individual Justices may author opinions explaining the Court's rulings). See Ga. Const. of 1983, Art. VI, Sec. VI. Nothing in our Constitution suggests that this Court can mandamus itself or its Justices, nor does such an odd practice find support in our precedent or the history of the writ of mandamus. Objections to the Court's action or inaction in a case may be raised by appropriate pleading in that case, directed to and decided by the Court, without resort to mandamus.

Accordingly, we hold that mandamus does not lie against this Court or its Justices, and Clark's original petition for mandamus against Chief Justice Hunstein is therefore dismissed.

*Petition for mandamus dismissed. All the Justices concur, except Hunstein, C. J., who is disqualified.*

DECIDED OCTOBER 1, 2012.

Robert L. Clark, *pro se.*

---

[4] This principle extends even to court clerks and legal staff. See, e.g., *In re Marin*, 956 F2d 339, 340 (D.C. Cir. 1992) ("We are aware of no authority for the proposition that a lower court may compel the Clerk of the Supreme Court to take any action."); *Johnson v. Supreme Court of U. S.*, No. Civ. A. 05-759-KAJ, 2006 WL 167555, at *1 (D. Del. Jan. 24, 2006) ("I am not aware of any authority permitting a federal district court to issue a writ of mandamus against the Clerks or Justices of the United States Supreme Court."); *Coombs v. Staff Attorneys of Third Judicial Circuit*, 168 FSupp.2d 432, 436 (E.D. Pa. 2001) ("[R]eview of actions of officers or employees of a court of appeals by a district judge presents serious jurisdictional and practical problems.").

*Samuel S. Olens, Attorney General, Dennis R. Dunn, Deputy Attorney General, Jennifer Colangelo, Assistant Attorney General,* for appellee.