NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: March 18, 2025

S24O1335.  ARNOLD v. ALEXANDER, CLERK.

BOGGS, Chief Justice.

Petitioner Deandre Arnold filed a petition in this Court seeking a writ of mandamus against Ché Alexander, the Clerk of the Fulton County Superior Court, alleging that the Clerk has subjected Petitioner, as an indigent pro se litigant, to a Catch-22 situation that unlawfully prevents him from filing any civil complaint. For the reasons explained below, we conclude that, except in very limited circumstances not present here, we lack original jurisdiction to grant the sort of relief Petitioner seeks and that the case does not fall within our appellate jurisdiction. Accordingly, we transfer the original petition to the Court of Appeals for resolution.

In his verified original petition, Petitioner alleges that he attempted to file a civil complaint, accompanied by an affidavit of

indigence, through the Fulton County Superior Court's e-filing system, which is mandatory even for pro se filers unless they are incarcerated. However, the complaint was rejected because it was not accompanied by an order authorizing him to file "using a waiver payment account." Petitioner called the Clerk's office and was told that any person seeking to file a complaint accompanied by an affidavit of indigence must first obtain an order authorizing indigent status. He was also advised that to obtain such an order, he had to present the complaint in person and be sworn before a superior court judge, who would either grant or deny the request for indigent status. Finally, he was told that the Clerk would not accept the filing by mail. Petitioner represents that he is unable to drive or to walk the 25 miles from his home to the Clerk's office and that there is no private party available to transport him. He asserts that the Clerk's policy of not accepting complaints accompanied by an affidavit of indigence is contrary to OCGA § 9-15-2, which sets forth procedures for a party to present an affidavit as to the party's indigence in lieu

of payment of costs.[1] He also asserts that the Clerk's policy violates

the Clerk's ministerial duty to file papers and that the policy violates

---

[1] OCGA § 9-15-2 provides, in full:

(a)(1) When any party, plaintiff or defendant, in any action or proceeding held in any court in this state is unable to pay any deposit, fee, or other cost which is normally required in the court, if the party shall subscribe an affidavit to the effect that because of his indigence he is unable to pay the costs, the party shall be relieved from paying the costs and his rights shall be the same as if he had paid the costs.

(2) Any other party at interest or his agent or attorney may contest the truth of an affidavit of indigence by verifying affirmatively under oath that the same is untrue. The issue thereby formed shall be heard and determined by the court, under the rules of the court. The judgment of the court on all issues of fact concerning the ability of a party to pay costs or give bond shall be final.

(b) In the absence of a traverse affidavit contesting the truth of an affidavit of indigence, the court may inquire into the truth of the affidavit of indigence. After a hearing, the court may order the costs to be paid if it finds that the deposit, fee, or other costs can be paid and, if the costs are not paid within the time permitted in such order, may deny the relief sought.

(c) The adjudication of the issue of indigence shall not affect a decision on the merits of the pending action.

(d) When a civil action is presented for filing under this Code section by a party who is not represented by an attorney, the clerk of court shall not file the matter but shall present the complaint or other initial pleading to a judge of the court. The judge shall review the pleading and, if the judge determines that the pleading shows on its face such a complete absence of any justiciable issue of law or fact that it cannot be reasonably believed that the court could grant any relief against any party named in the pleading, then the judge shall enter an order denying filing of the pleading. If the judge does not so find, then the judge shall enter an order allowing filing and shall return the pleading to the clerk for filing as in other cases. An order denying filing shall be appealable in the same manner as an order dismissing an action.

his federal constitutional rights to equal protection, due process, and access to the courts. He also contends he has no adequate remedy other than filing an original petition in this Court because if he attempted to file a mandamus petition in superior court, he would run into the exact same difficulty because he cannot appear in person to present a writ of mandamus and affidavit of indigence and the Clerk would not accept such a filing by mail. He seeks an order from this Court directing the Clerk and her staff to accept all filings accompanied by an affidavit of indigence and to present such filings to a judge.

1. It is well established that this Court has a "duty to inquire into [its] jurisdiction in any case in which there may be a doubt about the existence of such jurisdiction." *State of Ga. v. Fed. Defender Program, Inc.*, 315 Ga. 319, 324 (882 SE2d 257) (2022) (cleaned up).[2] Here, it appears that Petitioner is asserting that this Court has jurisdiction to consider his original petition under Article VI, Section

---

[2] We asked the parties and interested amici to address the question of this Court's jurisdiction, and we thank the parties for their supplemental briefs and the Attorney General for his helpful amicus brief.

I, Paragraph IV of the 1983 Constitution ("Paragraph IV"). "When we inquire into the meaning of a constitutional provision, we look to its text, and our object is to ascertain the meaning of the text at the time it was adopted." *Lathrop v. Deal*, 301 Ga. 408, 428 (801 SE2d 867) (2017) (cleaned up). We "view the text in the context in which it appears, and read the text in its most natural and reasonable way, as an ordinary speaker of the English language would." Id. at 429 (cleaned up). "In so doing, we typically refer to the rules of English grammar, inasmuch as those rules are the guideposts by which ordinary speakers of the English language commonly structure their words." *Walton Electric Membership Corp. v. Georgia Power Co.*, ___ Ga. ___ ( ___ SE2d ___ ) (Jan. 28, 2025) (S24G0314, S24G0318) (cleaned up). Additionally, "for relevant context, we may look to, among other things, the other law—constitutional, statutory, and common law alike—that formed the legal background of the constitutional provision in question at the time of its adoption." *Lathrop*, 301 Ga. at 429 (cleaned up).

Although Petitioner references the "original jurisdiction" of

5

this Court,[3] the term "original jurisdiction" does not appear in our current Constitution. However, shortly after the ratification of the 1983 Constitution, we used the phrase "original jurisdiction" in *Brown v. Johnson*, 251 Ga. 436, 436 (306 SE2d 655) (1983), and suggested that Paragraph IV authorized this Court to grant a writ of mandamus to a superior court judge as an exercise of "original jurisdiction." Since *Brown,* we have on occasion in published opinions dismissing similar original petitions referred to our "original jurisdiction." See, e.g., *Gay v. Owens* 292 Ga. 480, 483 (738 SE2d 614) (2013); *Graham v. Cavender*, 252 Ga. 123, 123 (311 SE2d 832) (1984). But we have not addressed the scope of the "powers" granted in Paragraph IV. And while we and the Court of Appeals have both used the phrase "original jurisdiction" in published opinions since 1983, we have not expressly held that the

---

[3] In his jurisdictional statement, Petitioner also relies on OCGA § 9-6-24, which provides, "Where the question is one of public right and the object is to procure the enforcement of a public duty, no legal or special interest need be shown, but it shall be sufficient that a plaintiff is interested in having the laws executed and the duty in question enforced." However, that statute addresses the *standing of a party* to seek relief, see, e.g., *Williams v. DeKalb County*, 308 Ga. 265, 272 (840 SE2d 423) (2020), rather than a *type of jurisdiction* conferred upon this Court.

Constitution of 1983 grants such jurisdiction.

As we noted in *Brown,* every constitution since the creation of this Court, except the 1983 Constitution, expressly provided that this Court "shall have no original jurisdiction."[4] From at least the 1800s, the term "original jurisdiction" has been understood as the authority of a court to hear and decide a case from the beginning as opposed to the appellate jurisdiction of a higher court to review a

---

[4] See Ga. Const. of 1976, Art. VI, Sec. II, Par. IV; Ga. Const. of 1945, Art. VI, Sec. VI, Par. IV; Ga. Const. of 1877, Art. VI, Sec. VI, Par. V; Ga. Const. of 1868, Art. V, § 742; Ga. Const. of 1865, Art. IV, Sec. I, § 4971; Ga. Const. of 1861, Art. IV, Sec. 3; Ga. Const. of 1798, as amended effective 1835, Art. III, Sec. I (Acts 1835, Annual Session p. 49) (providing that the judicial powers of the State "shall be vested in a supreme court"; that the Supreme Court shall consist of three judges "who shall be elected by the legislature"; and that "said court shall have no original jurisdiction"). In 1845, the legislature passed an Act "to carry into effect that part . . . of the Constitution, which requires the establishment of a Supreme Court." See Ga. Acts, 1845, p. 18.

In determining what Paragraph IV means, we need not decide in this opinion the effect of the removal of the express prohibition on original jurisdiction given that Paragraph IV first appeared in the 1983 Constitution. However, we note that some of the framers of the 1983 Constitution expressed concerns that the no-original-jurisdiction provision of the 1976 Constitution posed a potential obstacle to this Court's exercise of its preexisting statutory authority to grant writs of mandamus to force recalcitrant trial courts to send up a record or to restrain trial courts from taking action while a case was on appeal. See Transcripts of Mtgs., Select Committee to Revise Art. 1, Vol. 9 pgs. 202-203, 260, 279-282, 295 (Meetings 1977-1981).

judgment from a lower court. See Black's Law Dictionary (1st ed. 1891) (defining original jurisdiction as "[j]urisdiction in the first instance; jurisdiction to take cognizance of a cause at its inception, try it, and pass judgment upon the law and facts. Distinguished from *appellate* jurisdiction." (emphasis in original)). An appellate court's issuance of a writ of mandamus that is not connected to a pending or impending appeal is also considered an exercise of "original jurisdiction." See *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 175-176 (2 LEd 60) (1803) (explaining that the issuance of a writ of mandamus by that Court to the Secretary of State, which writ was not necessary to enable the Court to exercise its appellate jurisdiction, would be an exercise of the Court's original jurisdiction). However, an appellate court's issuance of a writ of mandamus in aid of its jurisdiction is an exercise of appellate jurisdiction. See id. at 175.

So, with this background, the question is what are we to make of the suggestion in *Brown* that Paragraph IV was a source of "original jurisdiction." Paragraph IV, which is captioned "Exercise

8

of Judicial Power," provides:

> Each court may exercise such powers as necessary in aid of its jurisdiction or to protect or effectuate its judgments; but only the superior and appellate courts and state-wide business court shall have the power to issue process in the nature of mandamus, prohibition, specific performance, quo warranto, and injunction. Each superior court, state court, and other courts of record and the state-wide business court may grant new trials on legal grounds.[5]

The plain language of Paragraph IV does not mention "original jurisdiction," and the framers could have, but did not, include an original jurisdiction provision in Paragraph IV or in any other provision of the 1983 Constitution. Compare U. S. Const. Art. III, Sec. II, Cl. II (granting United States Supreme Court "original jurisdiction" over certain cases). But, as noted above, Paragraph IV, which first appeared in the 1983 Constitution, authorizes every court to exercise "such powers as necessary in aid of its jurisdiction

---

[5] As originally ratified, Paragraph IV did not include the state-wide business court. A 2018 amendment to the Constitution authorized the creation of the state-wide business court, and Paragraph IV was also amended at that time to grant the superior court "concurrent jurisdiction with the state-wide business court in equity cases." See Ga. L. 2018, pp. 1130, 1134, § 4 (ratified Nov. 6, 2018). Paragraph IV has not otherwise been amended in any material way.

or to protect or effectuate its judgments," but authorizes only certain courts, including this Court, "to issue process in the nature of mandamus, prohibition, specific performance, quo warranto, and injunction." In construing this provision, we observe that the use of the semicolon relates the first clause to the second. See *Springtime, Inc. v. Douglas County*, 228 Ga. 753, 755 (187 SE2d 874) (1972) ("The semicolon is normally employed in marking off a series of sentences or clauses of coordinate value, that is, to separate consecutive phrases or clauses which are independent of each other grammatically, but dependent alike on some word preceding or following."). Here, the first clause references "powers" that each court may exercise and the second clause refers to "the power to issue process" and describes the nature of that power as "mandamus, prohibition, specific performance, quo warranto, and injunction." Therefore, the exercise of Paragraph IV's grant of authority to issue writs of mandamus is connected only to "such powers as necessary in aid of its jurisdiction or to protect or effectuate its judgments." It does not grant jurisdiction to this Court

10

to issue process as an original matter wholly unconnected to its appellate jurisdiction.

Moreover, the authority granted in Paragraph IV mirrors the power this Court has had by statute since its creation to issue writs of mandamus to lower courts in limited circumstances. See, e.g., OCGA § 15-2-8 (3) (stating that the Supreme Court has authority "[t]o grant any writ necessary to carry out any purpose of its organization or to compel any inferior tribunal or officers thereof to obey its order"); Ga. Code Ann. 1933, § 24-3901 (3) (stating that Supreme Court has authority to issue writs necessary to purposes of organization); Ga. Code Ann. 1860, Part I, Title V, Chapter II, § 211 (3) (authorizing this Court to "grant any writ necessary to carry out any purpose of its organization, or to compel any inferior tribunal, or officer thereof, to obey its order"); Ga. Laws 1845, p. 21-22 (allowing this Court to issue a writ of mandamus to a superior court judge who refuses to certify a bill of exceptions, to a clerk of court who fails to transmit the record in a case, or to a sheriff who fails to perform any duty imposed under the Act). This Court has exercised

11

the power granted in these statutory provisions in the context of an ongoing or impending appeal. See, e.g., *McLendon v. Anderson*, 207 Ga. 243, 243 (60 SE2d 762) (1950) (granting application for writ of mandamus to compel trial judge to enter an order of supersedeas as to the sentence of execution upon the filing of the bill of exceptions where execution date would render appeal moot); *Sears v. Candler*, 112 Ga. 381, 382 (37 SE 442) (1900) (granting application for writ of mandamus to compel trial judge to certify a bill of exceptions); *Taylor v. Reese*, 108 Ga. 379, 383 (33 SE 917) (1899) (same). However, we have not found any case in which we have held that the power to grant a writ of mandamus to a lower court authorized this Court to exercise original jurisdiction as that term is generally understood. See generally *Vanderford v. Brand*, 126 Ga. 67, 68 (54 SE 822) (1906) (quoting the express constitutional prohibition on the exercise of original jurisdiction by this Court and explaining that this Court's power to issue writs of mandamus to lower courts in connection with pending or impending appeals is "ancillary" to this Court's appellate jurisdiction and not an exercise of original

jurisdiction).

Finally, an additional important context to consider is that Paragraph IV appears in the constitutional provision addressing "Judicial Power" generally. It does not appear in Article VI, Section VI, Paragraphs II and III of the 1983 Georgia Constitution, which are the constitutional provisions that specifically grant this Court "appellate jurisdiction." Those provisions provide that this Court "shall be a court of review" that exercises "exclusive appellate jurisdiction" in specified cases and non-exclusive "appellate jurisdiction" in other categories of cases. Ga. Const. of 1983, Art. VI, Sec. VI, Par. II and III.

Accordingly, we conclude that the best reading of the plain language of Paragraph IV, viewed in context, authorizes this Court and the Court of Appeals to grant a writ of mandamus only in matters related to an appeal or impending appeal, when necessary in aid of appellate jurisdiction or to protect or effectuate appellate

court judgments.[6] A different reading of Paragraph IV as authorizing this Court to have "original jurisdiction" to issue writs of mandamus unrelated to an appellate matter would be contrary to the plain language of that provision. See *Camden County v. Sweatt*, 315 Ga. 498, 509 (883 SE2d 827) (2023) (in construing a constitutional provision, we give the "text its plain and ordinary meaning, view the text in the context in which it appears, and read the text in its most natural and reasonable way, as an ordinary speaker of the English language would" (cleaned up)). See also *TDGA, LLC v. CBIRA, LLC*, 298 Ga. 510, 511-512 (783 SE2d 107) (2016) (in construing constitutional provisions, "courts are not authorized either to read into or read out that which would add to or change its meaning" (cleaned up)). To the extent that *Brown*, 251

---

[6] As we correctly explained in *Brown*, 251 Ga. at 436-437, it will be an "extremely rare" circumstance that would require a party to seek a writ of mandamus in this Court in the first instance, given that superior court judges have the power to issue process in the nature of mandamus against other superior court judges or trial court officials. Moreover, when a superior court judge enters an order on a petition for writ of mandamus, the appeal should generally be directed to the Court of Appeals because, as explained in Division 2, it has appellate jurisdiction over most cases involving extraordinary remedies. See OCGA § 15-3-3.1 (a) (4).

Ga. at 436, and its progeny can be read as holding that Paragraph IV grants this Court or the Court of Appeals original jurisdiction to grant a writ of mandamus or prohibition unconnected to the appellate jurisdiction of the respective courts, those cases are hereby disapproved. [7]

2. Because we lack jurisdiction to grant the original relief Petitioner seeks, the next question to consider is whether this Court is even the proper appellate court to consider the exercise of authority under Paragraph IV over Petitioner's claim for relief.[8] The

---

[7] See, e.g., *Henderson v. State*, 303 Ga. 241, 245 (811 SE2d 388) (2018); *Gay*, 292 Ga. at 483; *Clark v. Hunstein*, 291 Ga. 646, 647-648 (733 SE2d 259) (2012); *Hackney v. Wharton*, 259 Ga. 492 (386 SE2d 660) (1989); *Graham*, 252 Ga. at 123-124; *Carey Canada, Inc. v. Head*, 252 Ga. 23, 23 (310 SE2d 895) (1984); *Byrd v. Robinson*, 349 Ga. App. 19, 20-21 (825 SE2d 424) (2019); *Byrd v. Glanville*, 345 Ga. App. 426, 426-427 (813 SE2d 776) (2018); *Expedia, Inc. v. City of Columbus*, 305 Ga. App. 450, 455 (699 SE2d 600) (2010).

[8] Since *Brown*, 251 Ga. at 436, this Court and the Court of Appeals have typically dismissed petitions for writ of mandamus for failure to follow the procedure outlined in *Brown*. See, e.g., *Gay*, 292 Ga. at 482-483; *Byrd v. Robinson*, 349 Ga. App. 19, 21 (825 SE2d 424) (2019). The Court of Appeals has, on occasion, transferred such petitions to this Court, but we have generally returned them to the Court of Appeals. See, e.g., *Ricks v. Smith, Clerk*, Case No. S17O0637 (Dec. 12, 2016) (returning original petition to the Court of Appeals after it had transferred the petition to this Court and stating that "both appellate courts have original jurisdiction to issue mandamus" pursuant to Paragraph IV).

authority that Paragraph IV gives us to grant a writ of mandamus when necessary in aid of our appellate jurisdiction or to effectuate our judgments must necessarily relate to one of the categories of cases over which we have appellate jurisdiction. We have "exclusive appellate jurisdiction" over election contests, cases involving the construction of a treaty or the United States or Georgia Constitution, and cases in which certain constitutional questions are presented. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II. We also have appellate jurisdiction over habeas corpus cases, cases certified by the Court of Appeals, all cases "in which a sentence of death was imposed or could be imposed," and all equity cases and cases involving extraordinary remedies related to cases in which a sentence of death was or could be imposed. Ga. Const. of 1983, Art. VI, Sec. VI, Par. III; OCGA § 15-3-3.1 (a) (2), (4).[9]

---

[9] We also have jurisdiction to answer questions of law from any state appellate court or any federal district or appellate court and over cases from the Court of Appeals in certain situations. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. IV and V; Art. VI, Sec. V, Par. IV and V. And we have "power" "to perform any function reasonably necessary to effectuate [our] jurisdiction, improve the administration of justice, and protect the judiciary as an

Petitioner has not included with his petition a copy of the civil complaint he sought to file below and has not described the nature of the action he sought to file. Given that this Court has appellate jurisdiction over only a small subset of all civil cases, we cannot presume that the case he seeks to file would invoke this Court's appellate jurisdiction. See Ga. Const. of 1983, Art. VI, Sec. VI. Par. II and III; OCGA § 15-3-3.1. Thus, Petitioner has not shown that any final judgment in that case would invoke the appellate jurisdiction of this Court.[10]

---

independent department of the government." *Wallace v. Wallace*, 225 Ga. 102, 111 (166 SE2d 718) (1969). Our resolution of this matter is limited to the question of our jurisdiction to grant the relief the Petitioner seeks and should not be read as affecting other sources of our jurisdiction and power. See *Schoicket v. State*, 312 Ga. 825, 832 (865 SE2d 170) (2021) ("It is, of course, axiomatic that a decision's holding is limited to the factual context of the case being decided and the issues that context necessarily raises.").

[10] Prior to the enactment of the Appellate Jurisdiction Reform Act of 2016 ("the Act"), Ga. L. 2016, p. 884 § 1-1, this Court had appellate jurisdiction over cases involving extraordinary remedies, which include writs of mandamus, prohibition, and quo warranto. See Const. of 1983, Art. VI, Sec. VI, Par. III; OCGA § 9-6-1 et seq. However, the Act placed appellate jurisdiction over most cases involving extraordinary remedies in the Court of Appeals beginning in 2017. Ga. L. 2016, p. 885-886 § 3-1; OCGA § 15-3-3.1 (a) (4). Although this change in appellate jurisdiction became effective in 2017, we have not previously grappled with how that jurisdictional shift impacted the power in Paragraph IV to grant writs of mandamus in aid of appellate jurisdiction.

Where we lack jurisdiction over a civil case, we are bound to transfer the case to the appropriate court that has jurisdiction. Ga. Const. of 1983, Art. VI, Sec. I, Par. VIII ("Any court shall transfer to the appropriate court in the state any civil case in which it determines that jurisdiction or venue lies elsewhere."). And the Court of Appeals has appellate jurisdiction over cases not reserved to this Court, see Ga. Const. of 1983, Art. VI, Sec. V, Par. IV and V, as well as the authority under Paragraph IV to grant writs of mandamus in aid of its jurisdiction.

Accordingly, we transfer this original petition to the Court of Appeals. We leave to that court the question of whether it is appropriate to issue a writ of mandamus in aid of its appellate jurisdiction to require the Clerk to accept by mail Petitioner's affidavit of indigence and civil complaint and present the same to a superior court judge. See OCGA § 9-15-2 (b), (d).

*Transferred to the Court of Appeals. All the Justices concur.*